**Dannie Lee GEAN, et al., Plaintiffs**

v.

**FMC CORPORATION, Defendant.**

**Civ. A. No. 87–AR–1492–NW.**

United States District Court,
N.D. Alabama,
Northwestern Division.

Sept. 16, 1992.

Dennis B. Reich, Gregg M. Rosenberg, Reich & Binstock, Houston, Tex., Steven D. Tipler, Birmingham, Ala., for plaintiffs.

Don G. DeCoudres, Birmingham, Ala., for Cling Surface Co.

F. A. Flowers, III, Burr & Forman, Hobart A. McWhorter, Jr., Bradley Arant Rose & White, Birmingham, Ala., for FMC Corp.

Braxton Ashe, Almon McAlister Ashe Baccus & Tanner, Tuscumbia, Ala., for Nat. Union Fire Ins. Co.

## ORDER

ACKER, District Judge.

This court feels it appropriate and probably helpful to a reader of the opinion of the Eleventh Circuit in *Gean v. FMC Corp.,* 971 F.2d 642 (11th Cir.1992), for the trial court to publish its findings and conclusions, from which the appeal was taken by plaintiffs, Dannie Lee Gean and his wife, to the Eleventh Circuit and which resulted in the Eleventh Circuit's above-cited opinion of September 3, 1992. A reader of the Eleventh Circuit's opinion will be better able to understand the appellate decision if he has a fair basis for comparing the reasoning employed by this court with the reasoning employed by the Eleventh Circuit. There is nothing wrong with having the whole story told.

The following language from this court's memorandum opinion of March 16, 1989, constitutes this court's only articulated justification for granting FMC's motion for j.n.o.v. and for this court's setting aside of the $4,000,000.00 judgment against FMC:

FMC's motion for j.n.o.v. is well taken, and due to be granted.... Plaintiffs withdrew their claim of wantonness as against FMC, so that the only issue submitted to the jury as to FMC was alleged negligence by FMC and the close kin of negligence, i.e., alleged violation of the Alabama Manufacturers Extended Liability Doctrine. Plaintiffs' theory against FMC depended upon proving facts demonstrating that FMC owed a duty to Gean, a breach of that duty, and facts demonstrating a chain of proximate causation connecting the breach of duty to Mr. Gean's terrible injury. Both the issue of duty and the issue of proximate causation finds plaintiffs' theories too convoluted, too disjointed, and too strained to be viable. The evidence construed most favorably to plaintiffs is that FMC sold a smooth pulley to an industrial supply house in response to a simple, express written order which gave a precise description of the pulley, but which did not inform FMC whether the pulley was to be used as a drive pulley or a lag pulley. Neither was FMC told the type of environment in which this particular pulley was to be used, nor even the name of the ultimate user. When used as a drive pulley in a wet environment (as it turned out, this was the use to which this pulley was put by Diamond Shamrock, Mr. Gean's employer), it might reasonably be anticipated that the conveyor belt would slip, an event which might be avoided by using a grooved pulley, which would more firmly grip the conveyor belt and thus prevent slippage. Plaintiffs argue that if FMC had notified the purchaser supply house of all appropriate limitations on the use of this smooth pulley, the supply house would, in all likelihood, have passed on this information to Mr. Gean's employer, Diamond Shamrock, the purchase of a grooved pulley would have resulted, no slippage would have occurred, and thus there would have been no need for any contact by Mr. Gean with the moving conveyor belt which jerked off his arm. This is like a row of ten dominoes spaced two feet apart. Knocking over one does not bring them all down.

The court does not believe that FMC had any duty to do more than to deliver the item which was ordered, without giving any warnings about possible slippage or about indirect, highly theoretical dangers which might result in a narrow range of circumstances. The reasonably prudent man is not a haruspex. There must be a limitation of what a manufacturer is required to anticipate in the way of use or misuse of its product, especially when it is unfamiliar with how the end user is going to use the product. If there is a limitation on what must be foreseen or predicted, there is a limita-

tion on what must be communicated to the user. Furthermore, there was no testimony in this case that Diamond Shamrock would have purchased a grooved pulley even if it had received the kind of communication plaintiffs insists was the duty of FMC to undertake. To the contrary, a smooth pulley in the identical application as a drive pulley had apparently worked satisfactorily for years in the same damp environment.

The following language in this court's subsequent memorandum opinion of January 4, 1991, contains this court's only articulated rationale for granting FMC's motion to preclude a possible alternative claim by the Geans against it, and explains this court's holding that if, *arguendo,* this court did commit error in setting the judgment aside against FMC, any claim by the Geans against FMC nevertheless, as a matter of law, had been satisfied or released by the Geans, because at the time of the release of the judgment against Cling Surface Corporation, there was no judgment against FMC:

> The complaint and the pre-trial order upon which this case was submitted to a jury on February 4, 1989, charged that two defendants, Cling Surface Company and FMC Corporation, were joint tortfeasors whose combined tortious conduct proximately caused severe injury to plaintiff, Dannie Lee Gean, the husband of plaintiff, Mary Ann Gean. The jury rendered a verdict in favor of the Geans and jointly against both said defendants, assessing compensatory damages against both said defendants in the sum of $4,000,000.00. Judgment accordingly was automatically entered by the Clerk. Thereafter, this court set aside the judgment as against FMC on post-trial motion but denied Cling's post-trial motions for j.n.o.v. and for new trial. As found by the Court of Appeals on March 27, 1990, the judgment which was entered against Cling was a final and appealable judgment, meaning, of course, that the judgment could have been executed upon by plaintiffs pending Cling's appeal except for the fact that Cling superseded

the judgment by posting a supersedeas bond in the amount of $4,600,000.00.

\* \* \* \* \* \*

The jury's determination that the Geans sustained *compensatory* damages in the sum of $4,000,000.00 forever adjudicated and limited the total amount of damages recoverable by the Geans to $4,000,-000.00. This became the law-of-the-case.

On September 25, 1990, while Cling's appeal to the Eleventh Circuit was pending, the Geans reached a settlement with Cling by which plaintiffs accepted the sum of $3,300,000.00 in full settlement of their judgment against Cling. It is this fact which is the primary subject of FMC's present motion. The written settlement agreement executed by and between plaintiffs and Cling purported to release Cling *"pro tanto "* while purporting "expressly" to retain the right to proceed against FMC, ostensibly in order to obtain an indeterminate amount of additional damages from FMC. Plaintiffs' best argument, if it had any merit, would expose FMC to no more than a liability of $700,000.00, the difference between $4,000,000.00 and $3,300,000.00.

The Geans rely on *American Pioneer Life Ins. Co. v. Sandlin,* 470 So.2d 657 (Ala.1985), while FMC relies on *Williams v. Woodman,* 424 So.2d 611 (Ala.1982). These two decisions by the Alabama Supreme Court are very difficult, but not impossible, to reconcile. FMC cites *Woodman* for the proposition that the release of a judgment debtor who is, or may be, liable jointly with another defendant constitutes a discharge of the claim as against the remaining defendant. The Geans argue that *Sandlin* permits a *pro tanto* release of one judgment debtor without releasing others who may be jointly liable to the plaintiff. There is no doubt that, by the terms of the written agreement between the Geans and Cling, the Geans have, in legal effect, satisfied the judgment against Cling. If a judgment debtor has been "released" from liability on a judgment, that judgment, as against that debtor, has surely been "satisfied". No nice semantic distinction can

change the fact or the law on this narrow subject. *Woodman,* quoting precisely from *Restatement of Judgments* ¶ 95 (1942), holds simply and straightforwardly:

> The discharge or satisfaction of a *judgment* against one of several persons each of whom is liable for a tort, breach of contract or other breach of duty, discharges each of the others from liability.

424 So.2d at 613 (emphasis supplied).

When *Sandlin* was decided three years after *Woodman,* it inexplicably did not mention *Woodman,* much less purport to overrule it. Instead, it referred to Ala. Code § 12–21–109, which provides that releases are to be given the effect intended by the parties. Of course, this provision has been in the Alabama Code since the Code of 1852. It was, then, the law of Alabama for 90 years before *Restatement of Judgments* and 130 years before *Woodman.* It would appear to be incumbent on this court to distinguish *Woodman* from *Sandlin,* if possible, so that they can both have a sphere of operation and one can control this case.

There is one crucial distinction between *Sandlin* and *Woodman* as the said two opinions may apply to the instant procedural facts. *Sandlin* involved the *pro tanto* release of one of several existing *judgment debtors.* It makes sense that a judgment creditor can safely accept *partial* payment of a joint *judgment* from one of the *judgment debtors,* if he expressly reserves the right to collect the balance of the *judgment* from other *judgment debtors.* This is the fact which separates the instant case from *Sandlin* and puts it in the *Woodman* category. The instant case is like *Woodman,* a case in which a *judgment* was satisfied against the one joint tortfeasor who had had a judgment against him, while the plaintiff tried to retain the right to sue another joint tortfeasor *against whom no judgment then existed. Woodman* held that where a single injury occurs as the proximate consequence of the combined torts of more than one actor, the satisfaction of a *judgment* entered against one acts as a release of those tortfeasors against whom no *judgment* has been entered. There is no other way to read *Woodman* and have it make sense. At the time of the instant settlement, the Geans clearly had an outstanding, collectible judgment against Cling but no judgment against FMC. As an alleged joint tortfeasor, it was released.

In *Woodman,* the Supreme Court expressly noted a finding by the trial court which had granted summary judgment to the secondly sued tortfeasor that "the damages *complained* of here are included in the damages *recovered* in that case". 424 So.2d at 615 (emphasis supplied). This court, which is a trial court, says the same thing about the Geans' claim against FMC. There is a marked difference, both theoretical and practical, between (1) settling a *judgment* fixed and entered upon a jury determination of the maximum amount of recoverable damage by the taking of less than the total amount of the judgment from one of several *judgment debtors,* reserving the right to collect against the other *judgment debtor,* and then executing on the other *judgment debtor* for the balance of the very same *judgment; and* (2) settling or compromising a *judgment* fixed upon a jury determination of the maximum amount of recoverable damage and then undertaking to go to trial against an alleged joint tortfeasor, *against whom no judgment exists,* for some indeterminate sum of additionally claimed damages. *Woodman* applies to bar the Geans from proceeding against FMC despite the Geans' very careful effort to craft a release which would preserve their right to sue FMC. What can't be done can't be done! Under this peculiar set of circumstances, when the Geans released Cling, they released FMC.

\* \* \* \* \* \*

DONE and ORDERED.